Swain et al. *v.* City of Princeton et al.

[No. 1168A197. Filed June 11, 1970. Rehearing denied July 23, 1970. Transfer denied October 16, 1970.]

*Ramsey & Ramsey, Joe D. Black,* of Vincennes, for appellants.

*McDonald and McDonald,* of Princeton, for appellees.

WHITE, J.—This is one appeal from three identical but separate judgments of dismissal for want of prosecution in three cases. Appellant Swain was sole plaintiff in two cases and appellant Cline was sole plaintiff in the third. Both appellees were defendants (and the only defendants) in all three actions for alleged property damage arising out of the same incident. During the time the defendants-appellees' motions to dismiss for want of prosecution were pending, plaintiffs-appellants filed motions to withdraw submission and to appoint a special judge, asserting that more than ninety days had elapsed since the motions to dismiss had been argued and submitted. The judgments of dismissal were entered eight days after the filing of the motion to withdraw submission. As a part of the same entry in each case, the regular judge overruled the motion to withdraw submission.

In plaintiff-appellant Swain's two cases (Nos. 4221 and 4222 in the Pike Circuit Court) entries were made long prior

to the dismissal in which "[t]he court now sustains defendants (sic) motion to consolidate this cause of action with cause No. 4221 [or with cause No. 4222] *for the purpose of trial. . . .* " Since these cases were never tried they were never actually consolidated. They were always treated (in the court below) as two separate cases and are here in two separate transcripts to which separate, but apparently identical, assignments of error are attached. Plaintiff-appellant Cline's case is here via a third transcript and a slightly different assignment of errors under Appellate Court Cause No. 1168 A 197. On petition of the appellants we ordered that all three causes be consolidated in this court under Cause No. 1168 A 197, entitled *Roy M. Swain, Sue Cline,* Appellants, v. *City of Princeton, William A. White,* d/b/a *White Construction Company,* Appellees.

We are faced at the outset with the motion of defendants-appellees to dismiss or affirm,[1] which motion has heretofore been held in abeyance pending final disposition. The motion enumerates eighteen apparent failures to comply with the rules of the Supreme Court. No. 17, the alleged failure to make a good faith effort to comply with Rule 2-17, contains six subspecifications. At this time we are inclined to believe that the motion should have been sustained and the appellees thereby relieved of the burden of briefing the case on the merits. However, since it has now been fully briefed, we believe we can more satisfactorily dispose of it with an opinion on the merits. Accordingly, appellees' motion to dismiss or affirm is overruled. Appellants' motions to amend their assignments of errors are sustained and the assignments are deemed amended. And, for the reasons hereinafter stated, the three judgments of the trial court are affirmed.

At the time the defendants filed their motions in the trial court for orders against the appellants (plaintiffs) to show

---

1. The motion is denominated "Joint and Several Composite Motion" which ends with a prayer "that the matters heretofore enumerated be striken from the files and expunged from the record; that the appeals be dismissed or in the alternative that the cases be affirmed."

cause why the actions should not be dismissed for want of prosecution pursuant to Supreme Court Rule 1-4C,[2] the plaintiffs were without attorneys and two of the cases had been pending over forty-five months and the third over sixty-five months. Except for the appearance and withdrawal of counsel, there had been no activity in one case for twenty months and no activity in the other two for thirty months.

Upon the filing of these motions, the trial court issued orders to the plaintiffs "to show cause why their action should not be dismissed on or before April 18th, 1968, under penalty of said cause being dismissed." The sheriff served certified copies of these orders on the plaintiffs by reading the same to them on March 28, 1968. On April 17, 1968, one day prior to the show cause date, plaintiffs' present counsel entered ap-

---

2. Rule 1-4C. Failure to Prosecute Civil Actions.

1. Whenever no action has been taken in a civil cause for a period of six consecutive months, the court, on motion of a party, or on its own motion, may issue a rule against the plaintiff to show cause by a day certain, if any there be, why said cause should not be dismissed for want of prosecution.

2. Said rule to show cause shall be entered of record and notice thereof may be served on each of the parties or their attorneys personnally or by first class United States mail.

3. If the plaintiff shall not show sufficient cause, verbally or in writing, within the time limited, why said cause should not be so dismissed, the court may dimiss the same at plaintiff's costs and shall notify plaintiff or his attorney of record thereof personally or by first class United States mail.

4. Within 60 days thereafter, plaintiff may file therein a verified petition to reinstate said cause alleging facts showing that either lack of notice, inadvertence or excusable neglect prevented plaintiff from showing cause why the same should not be dismissed and facts showing that plaintiff has a good cause of action. Notice, and a copy thereof, shall be served on the defendant or his counsel personally or by first class United States mail of the time of hearing thereof and defendant shall have the right to file counter-affidavits thereto. If the court finds that said lack of notice, inadvertence or excusable mistake prevented plaintiff from showing cause why said action should not be dismissed and finds that plaintiff has shown a prima facie cause of action, said action shall be reinstated. The court may condition such reinstatement upon the performance by plaintiff of such action as shall assure the diligent prosecution thereof. Effective July 1, 1965.

(This rule will supersede Burns' § 2-901 (6) (1964 Supp.))

"On and after January 1, 1968, this rule shall apply to all pending civil proceedings in trial courts." (Last sentence added November 14, 1967.)

pearances in the three cases. No further action is shown of record until April 28, 1968, when an entry identical to the following was made in each of the three cases:

"Comes now Ramsey & Ramsey by Joe D. Black and shows to the Court that the motion to dismiss has agreed to be argued at a later date and now requests the Court to rule the defendant to answer herein.

"Comes now Ramsey & Ramsey and file reasons for lack of prosecution of above case."

The "reasons" for want (or lack) of prosecution filed in each of the cases were in identical words, (except that in plaintiff Cline's case the personal pronoun was changed to the feminine gender), as follows:

"1. Plaintiff has, as is apparent from the record, exerted a substantial effort in order to have these cases prosecuted dilegently (sic). The very fact that so many attorneys have entered appearances in these causes should testify to the fact that these cases represent something more than harrassment (sic) as contended by the Defendants.

"2. The Plaintiff is neither a lawyer nor is he especially learned layman in legal matters. This case should not be dismissed because of the inactivity of his attorneys when he has solicited them to take action. Plaintiff has encouraged his attorneys who represented him to get this matters brought to a trial at the earliest possible date. This firm does not know the reason they have not done so.

"3. One reason for the delay apparently is the fact that a companion case that was venued to Knox County and was appealed consummed (sic) a substantial period of time. It appears that the attorneys for the Plaintiff were waiting to see the outcome of that case before pursuing these cases. That appeal was never heard on its merits, but was dismissed because of an improper filing date.

"4. It should be noted that Defendants have contributed greatly in the delay in having this case tried by their numerous dilitory (sic) motions. They have been especially dilitory (sic) in answering any of the statements in the Plaintiff's complaints.

"5. An additional reason for the Plaintiff's inability to get this matter expedited and possibly the main one, is that although he has had some assets tied up in real estate and

other property, he has had no resources with which to retain an attorney."

These "reasons" were not verified and were signed only by counsel. They contain, it will be noted, no categorical denial of want of due diligence and in particular, no denial of the dismissal motion's allegation that no action had been taken in appellant Cline's case since July 20, 1966, (twenty months prior to the filing of the motion to dismiss) and in appellant Swain's cases since September 28, 1965, (thirty months prior). At best, these statements are argumentative denials of personal neglect (as distinguished from their prior attorneys' tacitly admitted neglect)[3] to prosecute their cases against the appellees.

The statement of reasons for lack of prosecution was followed by a prayer that the motion to dismiss be denied and "that Defendant be ruled to answer." The signature was followed by the words "Oral Argument Requested."

No evidentiary hearing on the motion was requested or held, but oral argument was had on May 1, 1968, the entry of which also notes that "[t]he Court takes the same under advisement." No bill of exceptions or transcript of what was said at the oral argument appears in the record.

Prior to the oral argument, and on the same day that plaintiffs filed their statement of reasons for lack of prosecution, defendants filed what is denominated "Brief in Support of Defendants' Motion to Dismiss," which points out:

"That there has been no compliance with this Court's order to show cause on or before April 18, 1968, either orally, or in writing, and a mere appearance by the attorneys for the plaintiff is not even substantial compliance with this Court's order."[4]

3. No fraud or collusion is alleged. Appellants are bound by the conduct of their attorneys. *Ferrara v. Genduso*, (1938), 214 Ind. 99, 14 N. E. 2d 580.
4. Whether defendants' attorney knew at the time he filed this brief, that appellants' attorney had filed (or was about to file) the statement of reasons for lack of prosecution nowhere appears of record, but it seems

Each of the three transcripts shows two entries for July 17, 1968, (seventy-six days after the oral argument). The first of these entries recites: "Plaintiff files additional brief and memorandum of authorities in opposition to motion to dismiss." The brief and memorandum is not set out in that entry or otherwise identified, described or summarized. But the second entry recites the filing of a letter

"which said LETTER is in words and figures as follows, to wit:

\* \* \*

"Dear Judge Nixon:

"You will recall that during April we argued on a Motion to Dismiss for lack of prosecution in the above entitled causes. Since that time I have come across the following two cases, which I believe should be considered in these causes:

"Bilat (sic) vs Folta 228 N. E. 2d 888

"State ex rel Uzelac vs Lake—Criminal Court 212 N. E. 2d 1221

"The Supreme Court seems to indicate that it is their intention to make this rule applicable only to cases initiated on or about July 1, 1965. A reference to our files indicates that all these matters were initiated during the spring and summer of 1964. The new amendment to rule 1-4-C as to all pending litigation done, it seems to me, reverses the above two cases as to litigation beginning before July 1, 1965."

The briefs of both parties seems to be in agreement that the above quoted letter is the "additional brief and memorandum of authorities" mentioned in the first entry.

Defendants' attorney then wrote a letter to the trial judge which also seems to have been noted twice in the record, first as a "brief and memorandum" and secondly as a letter, and which is as follows:

"Dear Judge Nixon:

"I am in receipt of a copy of a letter by Ramsey and Ramsey in which the cases of Bielat vs Folta, 228 N. E. 2nd,

apparent that the brief was drawn in ignorance of the late filing of the statement of reasons.

88 and State ex rel Uzelac vs. Lake Criminal Court, 212 N.E. 2d, 1221 were cited by counsel.

"In the Bielat case, the opinion was rendered by the Appellate Court August 21, 1967. By that the Court held that Rule 14-c was not applicable to cases filed prior to the adoption of Rule 14-c on July 1, 1965. Subsequent to this decision, however, the Supreme Court amended Rule 14-c, by a Rule adopted November 14, 1967. By this amendment the Supreme Court overruled the previous holding in the Bielat Case and the Rule expressly provides:

'On and after January 1, 1968, this Rule shall apply to all pending Civil proceedings in trial Courts.'

"It is readily apparent that the appellate court decision cited by counsel is no longer effective in view of the specific language of the amendment to Rule 14-c above quoted."

Thereafter, on August 28, 1968, plaintiffs filed, in each case, a motion to withdraw submission in which it is recited that the motion to dismiss for want of prosecution was argued and submitted to the court for ruling on May 1, 1968, and that ninety days have elapsed since submission but no ruling has been made. Seven days later the court overruled the motion to withdraw submission, sustained the motion to dismiss, and dismissed each cause at each plaintiff's costs.

On the merits of the rulings sustaining defendants' motions to dismiss for want of prosecution, we have no hesitancy in finding that it was not an abuse of discretion. The Supreme Court stated in *Rogers* v. *Youngblood*, 226 Ind. 165, 170, 78 N. E. 2d 663 (1948), that "Courts are endowed with large administrative discretion in the conduct of their business and in the absence of abuse of discretion this court will not interfere in such matters." There the trial court had dismissed a state prison inmate's *pro se* replevin action because he was not present when the case was called for trial. This was held to "constitute a failure to prosecute and, ordinarily, would be good ground for dismissal." Further, the court said:

"Courts cannot be asked to carry cases on their dockets indefinitely and the rights of the adverse party should also

be considered. He should not be left with a lawsuit hanging over his head indefinitely." (226 Ind. at 170.)

That opinion does not state whether the power to dismiss for the plaintiff's failure to proceed with trial on the date set is an inherent power of the court or whether it is grounded in statute or court rule.

Likewise, in *Cabinet Makers Union* v. *City of Indianapolis* (1896), 145 Ind. 671, 44 N. E. 757, the power to dismiss for want of prosecution was assumed. In that case there was conflicting evidence, by way of affidavits, as to whether the delay was excused by agreements of counsel *dehors* the record. It was held that the affidavits in support of the motion to dismiss were sufficient to sustain the dismissal and that the Supreme Court could not weigh the conflicting evidence. The court added:

> "Besides the determination of motions to dismiss an action for want of prosecution is largely within the discretion of the trial court, whose action will not be reviewed by this court unless a clear case of abuse of that discretion is shown, which has not been done." (145 Ind. at 673.)

In *Blickenstaff* v. *Cowgill* (1914), 58 Ind. App. 378, 379, 106 N. E. 376, an action was dismissed for want of prosecution, on defendant's motion which was grounded on a local rule of court. The rule provided that causes which had not been advanced in two previous terms would "be dismissed on call, unless at that time some reason supported by affidavit, be shown to the contrary." We upheld the power of the trial court to make and enforce the rule as well as the court's common law and inherent power to dismiss for want of prosecution, notwithstanding the pendency of a demurrer to the complaint. But more pertinent to the case at hand, we said:

> "After the action had been brought and an issue of law raised upon the pleadings, it was the duty of the plaintiff

and not the defendant to see that such issue was promptly disposed of and his cause advanced. There was also a duty resting upon the court to dispose of the issue raised by the demurrer with reasonable promptness, but this does not diminish the burden on the plaintiff to advance the issues. The defendant was not precluded from making a motion to dismiss because there was a pending demurrer to the complaint, but the fact that a demurrer was pending was a circumstance for the court to consider in passing upon the motion to dismiss. The plaintiff's failure to advance the cause after the demurrers were filed may be considered as at least some evidence showing an abandonment of the cause. The burden is not upon the defendant in a suit to carry it to a termination; this was for the plaintiff.

\* \* \*

"The rule is well established that the determination of motions to dismiss an action for want of prosecution is largely within the discretion of the trial court, whose discretion will not be reviewed by this court unless a clear case of abuse is shown. *Cabinet Makers Union* v. *City of Indianapolis, supra.* In the present case the court passed upon the sufficiency of the reasons urged to prevent dismissal and to procure reinstatement, and found that such reasons were not a justification for failing to advance the cause. There were conflicting affidavits, and there is evidence tending to support the court's action in dismissing the cause and in refusing to reinstate it. There is no showing that the trial court abused its discretion. The weight of evidence is for the trial court, and not for this court." (58 Ind. App. at 380.)

More lately we have had occasion to hold that we are bound by later decisions of the Supreme Court holding that there is no inherent or common law power to dismiss except for want of jurisdiction. *Slagle* v. *Valenziano* (1963), 134 Ind. App. 360, 364, 188 N. E. 2d 286; *State ex rel. Hurd* v. *Davis* (1949), 227 Ind. 93, 84 N. E. 2d 181; *Wayne Pump Co.* v. *Gross Income Tax Division* (1953), 232 Ind. 147, 110 N. E. 2d 284; *State ex rel Terminix Co. of Ind.* v. *Fulton C. C.* (1956), 235 Ind. 218, 132 N. E. 2d 707.

In the meantime, however, the General Assembly had added

a sixth clause to the dismissal statute[5] which provided for dismissal for failure to bring actions to trial which had been at issue two years "unless good cause for delay is shown". But by the time we were again faced with a dismissal for want of prosecution, that clause of the statute had been superseded by Supreme Court Rule 1-4C which, however, we held to be not effective as to cases initiated prior to July 1, 1965. *Bielat* v. *Folta* (1967), 141 Ind. App. 446, 228 N. E. 2d 888. On November 14, 1967, the Supreme Court nullified *Bielat* by adding to Rule 1-4C the words: "On and after January 1, 1968, this rule shall apply to all pending civil proceedings in trial courts."

This rule empowers trial courts to dismiss actions for want of prosecution and provides the procedure for the exercise of that power. The apparent purpose and effect of that procedure is to provide that there is, *prima facie,* a want of prosecution "[w]henever no action has been taken in a civil cause for a period of six consecutive months". That *prima facie* presumption may, however, be rebutted, but the burden is definitely on the plaintiff to rebut it for the rule plainly says that "[i]f the plaintiff shall not show sufficient cause, verbally or in writing, within the time limited, why said cause should not be so dismissed, the court may dismiss the same at plaintiff's costs. . . . ."[6] The rule contains no language expressing any intent to require any proof or any statement of reasons for dismissal by the defendant or by the court, either of whom may be the moving party. The only conditions precedent to the issuance of the rule to show cause why the case should not be dismissed are, 1) that no action has been taken for a period of six consecutive months,

---

5. Ind. Acts 1881 (Spec. Sess.) ch. 38, § 433, p. 240, as amended by Ind. Acts 1961, ch. 224, § 1, p. 535, being Burns IND. STAT. ANN. § 2-901. (Superseded July 1, 1968, by Rule 1-4C [Note 2 *supra*] and on January 1, 1970, by TR 41 (E), INDIANA RULES OF PROCEDURE.)
6. Rule 1-4C, clause 3. (Footnote 2.)

and 2) a motion, by the court or by a party, for the rule to show cause.

The only question raised by appellants' variously phrased assignment that the trial court committed error in dismissing the action[7] is whether the trial court abused its discretion in finding (as the dismissal implies) that appellants did not show sufficient cause, verbally or in writing, within the time limited, why said cause should not be so dismissed.

The only attempt at showing cause which is to be found in any of these three transcripts is the written "Reasons for Lack of Prosecution . . . " which we have already considered and found wanting. Plaintiffs-appellants in their brief here, as well as in the argumentative words tacked onto several of their assignments of error, have attempted to show additional reasons or causes not raised below. It would seem to be elementary that the trial court judge could not have abused his discretion or otherwise have committed error by ignoring a reason or cause which was not presented to him. Appellants' counsel himself seems not yet to have been aware of these additional causes at the time he filed (in the trial court) his petitions for reinstatement.[8] But aside from the fact that these additional causes or reasons have been waived by failure to present them to the trial court, none of them impress us as cogent. The most nearly persuasive of these is appellant Cline's contention that it was an abuse of discretion to dismiss her case for want of prosecution while demurrers to her complaint were still pending. Yet for the reasons therein stated we agree with the holding in *Blickenstaff* v. *Cowgill, supra,* (58 Ind. App.

---

7. Specifications numbered 5, 6, 7, and 8 of appellant Swain's assignments of error each commence, "the Trial Court erred in sustaining appellees' motion to dismiss for lack of prosecution". No. 5 contains no additional words, but various reasons are added to 6, 7, and 8. Appellant Cline's specification No. 5 is identical but her numbers 6, 7, 8, 9 and 10 vary in specifying different reasons as to each appellee. These argumentative embellishments are, at best, mere surplusage. The proposed amended assignments are identical to the original assignments.

8. The petitions for reinstatement are more fully discussed *infra*.

at 380), that the appellees were "not precluded from making a motion to dismiss because there was a pending demurrer to the complaint, but the fact that a demurrer was pending was a circumstance for the court to consider in passing upon the motion to dismiss." To this we must add that the "circumstance" must be called to the court's attention before the court is required to consider it. And there is nothing in this record before us to indicate that the able judge of the trial court was aware of the pendency of these demurrers at the time he dismissed these actions. All that *Blickenstaff* said about the pendency of the demurrers, and all that we have said about the failure to call it to the trial court's attention, applies with equal force to the remaining additional reasons on which appellants here rely to show error in the dismissal.

If we are to dispose of this appeal on its merits, we must also determine the effect of plaintiff-appellants' attempt to invoke the "lazy judge" rule[9] before the ruling was made on the motion to dismiss for want of prosecution. These motions requesting a withdrawal of the submission and the

---

9. Supreme Court Rule 1-13 was in effect at the time these cases were adjudicated below and at the time the appeal was perfected. It was superceded January 1, 1970, by Rules TR 53.1 and TR 53.2 of the Indiana Rules of Procedure. Rule 1-13 reads as follows:

"Rule 1-13. Time for Holding Issue Under Advisement. Whenever any issue of law or fact shall hereafter be submitted to the court for trial, ruling, or decision, and the judge shall take the same under advisement, the court shall not hold the same under advisement for more than ninety (90) days; but if the court wherein said issues are pending be then in vacation, he shall make his determination therein on the first day of the next succeeding term. Provided, that if the judge shall fail to determine any issue of law or fact within the time above reserved, then upon written application of any of the parties to the action or their attorneys of record duly filed in the office of the clerk of said court and called to the attention of said judge before the announcement of the decision of the issue in question, the submission of said issue shall thereupon be withdrawn and the judge before whom said cause is pending shall be disqualified to hear or determine any of the issues in said cause, and a special judge shall be appointed to take jurisdiction thereof under the same rules and regulations prescribed by law in cases where the judge is disqualified for hearing a given cause.

"With respect to any such issues under advisement on the date of the adoption of this rule, the ninety (90) day limitation shall begin to run from the date of its adoption. Adopted April 30, 1952." ..

appointment of a special judge which were filed August 26, 1968, 117 days after the oral argument at which the trial court judge took the motion to dismiss under advisement, pointed out that ninety days had elapsed since that time, and recited that the motion was "submitted" to the court for ruling at the time it was taken under advisement.

In *In re Ordinance No. 464, etc., et al.* v. *The City of Jasper* (1961), 133 Ind. App. 1, 176 N. E. 2d 906, we held that Rule 1-13 was directory and not mandatory and that it was not jurisdictional. Appellants' petition to transfer to the Supreme Court was denied with an opinion which held that the duty imposed on the trial court by Rule 1-13 is mandatory, but that "the parties may, by their own conduct, be estopped to assert a right to the relief to which they would otherwise be entitled."[10] That opinion did not hold, however, that a well taken lazy judge motion is jurisdictional as is, for instance, a well taken motion for change of venue, the filing of which deprives the court of jurisdiction to take any further action except to grant the change and to make emergency rulings.[11] The question, then is not whether the trial court's rulings are void, but whether they constitute reversible error. In short, were the plaintiffs entitled to a special judge?

Since no one disputes the fact that more than ninety days elapsed between submission of the motion to dismiss and the time the lazy judge motion was called to the judge's attention, and that there was no ruling during that period, it was error to refuse to withdraw the submission unless plaintiffs had estopped themselves (or waived their right) to demand withdrawal of submission.

10. *In re Ordinance No. 464, etc.* v. *City of Jasper* (1962), 242 Ind. 475, 476, 179 N.E.2d 749.

11. *Michigan Mutual Liability Co.* v. *Perez* (1965), 137 Ind. App. 247, 256, 207 N. E. 2d 368, 5 Ind. Dec. 501. The denial of a writ of prohibition in *State ex rel. Brueckner* v. *Jackson Cir. Ct.* (1967), 248 Ind. 377, 229 N.E.2d 465, affirms that a well taken lazy judge motion does not deprive the judge of jurisdiction.

Defendants, relying on the Supreme Court opinions in *Ordinance, etc.* v. *City of Jasper, supra,* (242 Ind. 475), *Bd. of Med. Reg.* v. *Turner,* 241 Ind. 73, 168 N. E. 2d 193 (1960), *State ex rel.* v. *Wirt,* 203 Ind. 121, 177 N. E. 441 (1931), contend that the appellants waived their rights under the lazy judge rule by writing the letter to the judge, which appellees characterize as "requesting the Court to consider additional briefs and questions after submission." The *Wirt* case involves the lazy judge statute which was superseded by Rule 1-13, which rule and statute the *City of Jasper* case distinguished on the ground that "a mandatory application of the statute . . . would have constituted an unconstitutional invasion and interference of the judiciary by the legislative branch of the government. . . . [but that such] constitutional impediment upon the legislature does not stand in the way of the enunciation of a mandatory rule of this court."[12] There is no conflict, however, between the holding in *Wirt* that "[i]t is clearly the duty of a trial court to overrule a motion to withdraw submission and to appoint a special judge when the party making the motion is responsible for or consents to the delay . . ."[13] and the rule stated in the *City of Jasper* case that a party's conduct could estop him from asserting his right to relief under the lazy judge rule. But what the appellant in *Wirt* did to make himself responsible for the delay was more than merely the filing of a brief and argument in the form of a letter raising new questions while the matter was under advisement. In *Board, etc.* v. *Turner, supra,* the appellant voluntarily filed proposed findings and conclusions when he could have invoked the lazy judge rule. Eleven days later he moved to withdraw the submission and it was held he had waived this right to claim the benefit of the rule by voluntarily taking action inconsistent with the right to claim benefit of the rule.

Therefore, if there were no more in this case to support

---

12. 242 Ind. at 476.
13. 203 Ind. at 132.

the contention of waiver or estoppel than the letter written by plaintiffs' counsel to the judge during the time the motion to dismiss was under advisement, we would be constrained to find neither a waiver nor an estoppel. But we believe the whole history of the plaintiffs' conduct in the prosecution of these cases should be the basis for deciding whether their conduct has estopped them from claiming the benefit of the rule. "Estoppel" and "waiver" both have many meanings, but we believe the context in which "estopped" is used in the *City of Jasper* case (242 Ind. at 476) and the context in which "waived" is used in the *Wirt* case (203 Ind. at 131) and the *Bd.* v. *Turner* case (241 Ind. at 77) indicates a meaning for both which is consistent with the following statement from *Kansas City Life Ins. Co.* v. *Davis,* (9th Cir. 1938) 95 F. 2d 952, 957:

" . . . [I]mplied waiver . . . is closely akin to estoppel and rests on a course of conduct . . . , evidencing an intention not to insist on some performance due. . . . "

(Cited also on page 651 of Black's LAW DICTIONARY [4th ed., 1957].)

Did the plaintiffs' course of conduct evidence an intention to insist, or an intention not to insist, on compliance with the time limitation which the lazy judge rule prescribes? We believe the same record which fails to demonstrate that plaintiffs prosecuted their cases with sufficient diligence to withstand defendants' motions to dismiss also constitutes ample evidence that plaintiffs never intended to insist on prompt performance by the judge or opposing counsel. The long pendency of the demurrer in appellant Cline's case is but one of the many conditions and situations which obtained in both cases prior to the issuance of the rule to show cause, which indicate an intent to ignore time limitations on their own procedural steps and to forego their right to demand that the opposing parties and the court observe them. Nor was this course of conduct significantly changed after the

issuance of the rule to show cause and the appearance of new counsel. Although the appellants each had personal notice of the rule three weeks before the day certain on which the rule required them to show cause, their "Reasons for Lack of Prosecution" were not filed until six days *after* it was due.

Lastly, appellant Swain contends that the trial court committed reversible error by sustaining appellees' motions to strike appellants' petitions to reinstate. Rule 1-4C, provides, by clause 4, for a verified petition to reinstate "showing that either lack of notice, inadvertence or excusable neglect prevented plaintiff from showing cause . . . and . . . showing that plaintiff has a good cause of action." Plaintiffs' petition to reinstate makes no attempt to show an excuse for failure to show cause why the actions should not be dismissed for want of prosecution. It makes no allegation of any kind as to whether any attempt was made prior to dismissal, or on the date fixed for showing cause, to show cause why the cases should not be dismissed. Instead, it attempts to excuse the want of prosecution by arguing that because plaintiff was not a lawyer he could not know that his attorneys were not exercising due diligence, but if he had known he would have employed other counsel. An attempt to show a good cause of action was made by realleging the allegations of the complaint.

The petition to reinstate not only fails to meet the requirements of Rule 1-4C (4), but, for reasons already stated, it wholly fails to show any reason for not dismissing the cases. Since the petition to reinstate wholly failed to comply with the requirements of the rule authorizing it, there was no error in striking it.[14] It was, at best, a motion

---

14. While a motion to strike a motion has been held to be irregular or improper procedure, it has also been held that the sustaining of such a motion "is equivalent merely to overruling the first motion." *Kitch, Admn.* v. *Moslander* (1943), 114 Ind. App. 74, 85, 50 N. E. 2d 933. Where, however, a party has a right to file a motion and to have it considered on its merits (as, for instance, a motion for new trial) and the court strikes it without considering it on its merits, under the mistaken belief that the party had no right to file it, there is error. *State, ex rel.* v. *White Cir. Ct.* (1958), 237 Ind. 443, 452, 147 N. E. 2d 10.

to reconsider the rulings dismissing the actions for want of prosecution and, as such, was wholly unauthorized by Rule 1-4C, or by any other rule or statute.[15]

Appellant has never contended that sustaining the motion to strike deprived him of the opportunity to amend his petition to reinstate to make it show that excusable neglect prevented him from showing cause why his cases should not be dismissed instead of merely showing (as he contends it shows) that excusable neglect was the reason for the want of prosecution.

The consolidated appeal having been considered on its merits and no reversible error having been found, the judgments of the trial court are affirmed. Costs are assessed against appellants.

Hoffman, P.J., Pfaff and Sharp, JJ., concur.

NOTE.—Reported in 259 N. E. 2d 440.

---

"[A] motion to strike out can not perform the office of a demurrer in determining the sufficiency of a pleading, but . . . where a pleading has been stricken out which palpably contains no valid cause of action the judgment will not be reversed because of irregular procedure adopted. *Clark* v. *Jeffersonville R. R. Co.* (1873), 44 Ind. 248. . . . *Wabash R. R. Co.* v. *Todd* (1917), 186 Ind. 72, 79, 113 N. E. 997. . . ." *East* v. *Carr* (1936), 210 Ind. 542, 544, 1 N. E. 2d 1004.

15. In *State ex rel. Randolph* v. *Hancock Cir. Ct.* (1962), 243 Ind. 156, 160, 182 N. E. 2d 248, the State's demurrer to a petition for writ of error *coram nobis* was overruled and the State was ruled to plead over. Instead of filing an answer the State filed a motion or petition (the opinion refers to it by both terms) for rehearing on the demurrer (after having successfully moved for a change of judge). The court said:

"Since the petition for rehearing of the State of Indiana presented no question for decision, there was nothing pending herein upon which an issue of law or of fact could be joined.

\* \* \*

"Relator's motion to strike the "Petition for Rehearing on Demurrer" filed by the State of Indiana should have been sustained by the respondent court, and further, respondent should have sustained relator's motion for judgment and entered judgment accordingly."